# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

SHARON MARIE ROBERTSON,

        Plaintiff,

vs.

SIOUXLAND COMMUNITY HEALTH
CENTER and MICHELLE STEPHAN,

        Defendants,


MICHELLE STEPHAN,

        Counterclaimant,

vs.

SHARON MARIE ROBERTSON,


        Counterclaim Defendant,

No. C 13-4008-MWB


**MEMORANDUM OPINION AND
ORDER REGARDING DEFENDANTS'
JOINT MOTION FOR PARTIAL
DISMISSAL**

_____

## TABLE OF CONTENTS

I.    **INTRODUCTION**............................................................... 3
    A.    *Factual Background* ................................................... 3
    B.    *Procedural Background* ........................................... 10

II.    **LEGAL ANALYSIS** ...................................................... 13
    A.    *Standards For Dismissal Pursuant To Rule 12(b)(6)* ...................... 13
    B.    *The Defendants' Motion To Dismiss*......................................... 15
        1.    *Lack of Title VII protection for sexual orientation* ................ 15
        2.    *Exhaustion of claims based on sex* .................................. 17
            a.    *Arguments of the parties* ...................................... 17
            b.    *Analysis* ......................................................... 19
                i.    *The administrative exhaustion requirement* ........ 19

　　　　　　　　*ii.　　Exhaustion here* ......................................... 22
　　　　3.　　*Pleading of claims based on sex* ...................................... 25
　　　　　　*a.　　Arguments of the parties* ...................................... 25
　　　　　　*b.　　Analysis* ........................................................ 27
　　　　　　　　*i.　　Harassment because of sex* ........................... 27
　　　　　　　　*ii.　　Same-sex harassment* .................................... 30
　　　　　　　　*iii.　　Robertson's　　"same-sex　　harassment"*
　　　　　　　　　　　*allegations* ................................................ 31
　　　　4.　　*Pleading of retaliation* .................................................. 33

**III.　CONCLUSION** ............................................................................... 34

In this action, the female former human resources director for a medical practice alleges that the medical practice and its female chief executive officer discriminated against and harassed her because of her sex and/or her sexual orientation and retaliated against her for resisting a sexually hostile work environment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Iowa Civil Rights Act (ICRA), IOWA CODE CH. 216, and discriminated against her because of her age, in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623 *et seq.*, and the ICRA.  The defendants have filed a "Joint Partial Motion To Dismiss,"[1]

---

[1] A "Joint Motion For Partial Dismissal" prompts the question, "What parts of the complaint do you seek to dismiss?"  In contrast, a "Joint Partial Motion To Dismiss" prompts the question, "Where is the rest of your motion?"  Notwithstanding the misleading title of their motion, it appears that the defendants are actually asserting a "Joint Motion For Partial Dismissal."

2

asserting that Title VII provides no cause of action for discrimination or harassment based on sexual orientation, that the plaintiff did not exhaust in administrative proceedings any federal or state claims of discrimination or harassment because of her sex, and that, because the plaintiff cannot state a sexual harassment claim, she also cannot state a Title VII retaliation claim. Thus, the defendants contend that the only claims that the plaintiff has stated upon which relief can be granted are her state sexual orientation claims and her federal and state age discrimination claims. I must determine what claims have been adequately pleaded and exhausted.

## I.    INTRODUCTION

### A.    Factual Background

"When ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). Thus, the factual background to a motion to dismiss must necessarily be drawn from the plaintiff's factual allegations.

In her Petition At Law (docket no. 2), originally filed in the Iowa District Court for Woodbury County, then removed to this federal court, plaintiff Sharon Marie Robertson alleges that, on or about January 2, 2004, she was hired by defendant Siouxland Community Health Center (SCHC) in Sioux City, Iowa, as the human resources director, and that she was discharged from her employment on or about November 30, 2011. Robertson alleges that, at the pertinent times, defendant Michelle Stephan was the chief executive officer (CEO) of SCHC and Robertson's direct superior.

Robertson alleges that, during her employment, she was subjected to a hostile and pervasive atmosphere of discrimination and harassment "based on [her] sex/sexual

3

orientation." Petition, ¶ 13. She alleges that the harassment included, but was not limited to, "Defendant Stephan subject[ing] [her] to unwanted and unwelcomed sexual comments, sexual questions, sexual conversations, sexual emails, sexual texts, and sexual jokes," including a list of twenty incidents. *Id.* at ¶ 13(a).[2] Robertson alleges

---

[2] Robertson alleges the following twenty incidents:

1.    Repeated inappropriate text messages, emails, phone calls, and face-to-face conversations instigated by Stephan directed to Robertson about [Robertson's] personal life and sexual orientation ([Robertson] is lesbian).

2.    Since the beginning of Robertson's hire, Robertson's sexual orientation and personal life has [sic] been a constant [and] common theme and topic of conversation of Stephan.

3.    In 2009 the volume and content of text and email messages Robertson received from Stephan became more than just inappropriate, they were harassing and created a hostile work environment for Robertson.

4.    Stephan, during a business trip to Florida, texted Robertson and asked Robertson if she knew of any fun gay bars. Robertson reluctantly searched the internet and sent her the information on entertainment in the local area.

5.    In January of 2009 Robertson was subjected to offensive jokes by Stephan's husband. Stephan was present at the time the offensive joke was told. The [Chief Operating Officer (COO)] and Assistant Medical Director were present at the time of the joke, the CEO [Stephan] was in the area. Robertson advised Stephan she and others were offended and Stephan retaliated against Robertson by being rude and difficult to Robertson for an extended period of

4

time, making Robertson's job more difficult and creating tension in the workplace.

6. Sometime before November 2009, Stephan and the COO of Siouxland Community Health Center were on a business trip in Las Vegas. The COO informed Robertson that she had to bring bar/party clothes for Stephan to wear because Stephan didn't want her husband to see what kind of clothes she was going to wear. Upon Stephan and the COO's return, the COO informed Robertson of her disgust with Stephan's drunken flirtation toward the soon-to-be business partners of SCHC.

7. During the same November 2009 business trip to Las Vegas identified in paragraph 6, Robertson received offensive, unwanted and unwelcomed inappropriate text messages from Stephan and her husband about gays and the following joke: "what did one lesbian frog say to the other lesbian frog? It's true, we do taste like chicken." Robertson did not respond back to the offensive and humiliating joke. Later that same night, Robertson received additional inappropriate text messages from Stephan regarding a pierced clitoris and if lesbians pierced their "clits." Robertson told Stephan not to text her anymore. When Defendant Stephan returned to the office after Los Vegas, Stephan excluded Robertson from meetings for a long time and Stephan was condescending and demeaning to Robertson. All of this adversely impacted Robertson's workplace performance and made it more difficult for her to do her job.

8. Between November 2009 and April 2010, Robertson received another text message from Stephan advising Robertson that a colleague they worked with is not gay. Robertson responded and asked how this came

5

up as a topic of discussion and why Stephan felt she needed to inform the [sic] Robertson.

9.     Between November 2009 and April 2010 when Defendant Stephan was on a business trip in Chicago, Stephan sent Robertson multiple text messages asking Robertson specific questions about homosexuals. When Robertson did not respond right away to Stephan, Stephan became hostile, which substantially adversely affected Robertson's job.

10.     Robertson received a text message from Defendant Stephan asking "if lesbians like to be on top or bottom?".

11.     Stephan was inappropriately infatuated with Robertson's sexual orientation and openly shared and discussed Robertson's orientation with others.

12.     Between March and April of 2010, Robertson informed Stephan that Robertson personally found Stephan's constant, non-work related texting during work and non-work hours offensive and often times harassing in nature and were inappropriate, unwelcomed, unwanted and Stephan's behavior was greatly affecting Robertson's personal life, family and relationship with her partner and Robertson felt this was producing an unhealthy working relationship between her and Stephan. The constant and inappropriate emails and texting of unwanted and unwelcomed sexual in nature themes from Stephan greatly impacted Robertson's personal life and health, consequently affecting her work life, as well.

13.     Robertson and her partner's long term relationship came to an end in March 2010 because Robertson's partner believed that Stephan had a sexual attraction to Robertson and possessed a strong control over Robertson as she learned of and witnessed Stephan's inappropriate texts and emails.

6

14.    In August or September of 2010 during a strategic budget planning meeting at Stephan's house it was stated to Robertson that Stephan's husband was infatuated with Robertson. Stephan acknowledged the infatuation and laughed at Robertson and said "I know."

15.    During the January 15, 2011 company holiday party, Defendant Stephan's husband asked Robertson in front of other Siouxland Community Health Center staff if Robertson thought his wife, Stephan, would make a good lesbian and if Robertson had heard the lesbian frog joke. Robertson advised Defendant Stephan that she did not appreciate her husband's comments. Stephan in retaliation never acknowledged the incident and was very cold and distant from Robertson during the next few weeks at work, creating a hostile and retaliatory work environment. Part of the retaliation was Stephan not including Robertson in necessary and important business meetings.

16.    At the beginning of 2011, Stephan sent Robertson a text message with the subject of wanting to "off" her husband and she asked Robertson if Robertson knew of any "big, butch dyke lesbians" to "take him out and make it look like an accident."

17.    Stephan, while going through her divorce, sent Robertson texts and emails regarding her divorce, her dislike of her soon-to-be ex-husband and how she was considering hooking up with a woman so she wouldn't have to deal with men and wondering if black men were any better than white men. By doing so, Stephan created a sexually hostile work environment for Robertson and adversely affected her job.

7

18.     Stephan told Robertson at the end of Stephan's
        divorce that Stephan's husband called Stephan
        screaming and telling her she was divorcing him
        because she's a lesbian and "wants to f... me
        [Robertson] and not him." Robertson told Stephan
        that Stephan offended her, that Robertson would
        never be with Stephan and that Robertson did not
        appreciate being brought into her divorce. Stephan
        responded by laughing. Robertson later told the COO
        of Siouxland Community Health Center that
        Robertson was upset and offended by Defendant
        Stephan's comments and that Robertson did not
        appreciate being brought into Stephan's personal life
        and did not like her sexual orientation being a topic of
        discussion and that it was extremely offensive,
        unwanted and unwelcome. After Robertson told the
        COO that, and Robertson believes as a consequence
        of it, Stephan, in retaliation, treated Robertson poorly
        and barely acknowledged Robertson's existence at
        work. This created a hostile work environment and
        adversely affected Robertson's job.

19.     In retaliation for Robertson objecting to and not
        participating in the sexually hostile environment
        created by Stephan, Stephan, [Robertson's] direct
        supervisor, challenged at every opportunity, what
        Robertson said to her staff, publically [sic]
        humiliating and abusing Robertson. By doing so,
        Stephan undermined Robertson's authority and
        credibility and made Robertson's job more difficult.
        It created divisions within the office that made
        everyone's job more difficult.

20.     Several times from August 2011 to October 2011, the
        COO of Siouxland Community Health Center
        complained to Robertson about Defendant Stephan's
        cleavage and inappropriate exposure of her bust.
        Because Robertson was the Human Resource
        Director, it was her job to bring this to Defendant

8

that the defendants knew or should have known of the hostile environment and discrimination, but that they failed to take corrective action and, indeed, encouraged the harassment and retaliated against her for objecting to it. *Id.* at ¶ 15. Robertson alleges that the harassment and discrimination ultimately resulted in her discharge from employment with SCHC—indeed, it does not appear that she alleges any form of discrimination, as distinguished from harassment or retaliation, other than her discharge. *Id.* at ¶ 11. Robertson also alleges that she "resisted the sexually hostile work environment fostered by the Defendants' conduct" by complaining about it to SCHC, Stephan, and other SCHC staff, but instead of taking appropriate action to end the harassment, the defendants retaliated against her "through adverse employment actions, up to and including termination." *Id.* at ¶¶ 18-20.[3]

Robertson alleges that she filed a timely Complaint of Discrimination with the Iowa Civil Rights Commission (ICRC) and the Equal Employment Opportunity Commission (EEOC) and that she was issued "right to sue" letters by both commissions. She alleges that, thereafter, she timely filed this lawsuit. *Id.* at ¶¶ 6-8.

---

> Stephan's attention. Robertson was afraid of Stephan's retaliation and potentially losing her job for making corrections like this, based on Stephan's pattern of behavior, but she did bring this to Stephan's attentions. During the month of November, 2011 Stephan did not include Robertson in meetings and often canceled a meeting or a scheduled discussion with Robertson. This was retaliation against Robertson for doing her job and for objecting to the sexually hostile environment created by Stephan.

Petition, ¶ 13(a)(1)-(20).

[3] The defendants do not challenge Robertson's age discrimination claims, so I will not summarize her pleading of those claims here.

Robertson has attached her administrative Complaint of Discrimination to her Petition as Exhibit A.

The claims asserted in Robertson's administrative charge and, consequently, the claims that are exhausted for purposes of her lawsuit, are in dispute. For the moment, I note that, in response to Question 6, which asked Robertson to "[p]lease check the ACTION that the Organization took against you. (Check all that apply)," Robertson checked "Harassment," "Sexual Harassment," and "Terminated," and also wrote in after "Other," "Hostile, volital [sic] work environment." On the other hand, in answer to Question 9, which asked, "Do you believe you were discriminated against because of your sex?," Robertson answered "no," and in response to Question 10, which asked, "Do you believe you were discriminated against because of your sexual orientation?," Robertson answered "yes" and indicated that her sexual orientation is "Lesbian." Also, in pertinent part, Robertson's Complaint of Discrimination states, in response to Question 17, that Robertson believed that she was treated differently since she complained about discrimination, explaining how she was retaliated against and by whom by stating, "Termination, Hostile work place by Michelle Stephan, Siouxland Community Health Center CEO." The administrative Complaint of Discrimination includes a 14-page typed narrative explaining the alleged discrimination, harassment, and retaliation. It also includes a 3-page list of reasons that Robertson claims that she was given for her termination, relating to alleged performance issues, with Robertson's response to each allegation.

### B.     Procedural Background

Robertson filed her Petition At Law in the Iowa District Court for Woodbury County on November 27, 2012. On January 17, 2013, the defendants removed this action to this federal court on the basis of federal question jurisdiction and supplemental

jurisdiction over Robertson's state law claims. *See* Joint Notice Of Removal (docket no. 1). After removal, Robertson's state court Petition was refiled in this court at docket number 2. The Petition states that Robertson's "causes of action are brought pursuant to the Iowa Civil Rights Act, Iowa Code Chapter 216, Title VII, and the Age Discrimination In Employment Act where relevant." Petition at ¶ 9. Count I asserts a claim of "Hostile Work Environment And Discrimination Based On Sex/Sexual Orientation," Count II asserts a claim of "Retaliation," alleging that Robertson resisted and complained about "the sexually hostile work environment" created by the defendants' conduct, and that Robertson suffered retaliation for such resistance and complaints, up to and including termination, and Count III asserts a claim of "Age Discrimination." None of the counts alleges the specific legal basis for the claim or claims stated therein, so that, like the defendants, I will assume that each count is based on both state and federal law. On Counts I and II, Robertson seeks compensatory damages, including back pay, front pay, benefits, training, promotions, and seniority; damages for past and future emotional distress and other non-pecuniary losses; punitive damages; past and future medical and counseling expenses; injunctive relief; costs, expenses, and attorneys' fees; interest; and such other relief as the court deems proper. On Count III, she seeks essentially the same damages, with the exceptions that she seeks "liquidated/punitive damages," rather than punitive damages, and she does not seek injunctive relief. By Order (docket no. 16), dated February 26, 2013, trial in this matter is set to begin on May 27, 2014.

On January 22, 2013, the defendants filed the "Joint Partial Motion To Dismiss Plaintiff's Petition" (docket no. 4), which is now before me. Also on January 22, 2013, SCHC filed its Answer (docket no. 5), and Stephan filed her separate Answer, Affirmative Defenses, And Counterclaim (docket no. 6), denying Robertson's claims. Stephan's Counterclaim alleges that Robertson's administrative charge is frivolous,

unreasonable, and groundless, and that the allegations were not made for their intended purpose, but for the improper purpose of shifting the blame for her discharge from her to Stephan, in the hopes of extracting some monetary concession, which has damaged Stephan's personal and professional reputation, Stephan's relationship with her current employer, and Stephan's prospects for future professional development.  Counterclaim (docket no. 6).[4]

On February 1, 2013, Robertson filed her Answer To Defendant Michelle Stephan's Counterclaim (docket no. 7), denying Stephan's Counterclaim.  On February 15, 2013, Robertson filed her Resistance To Defendants Siouxland Community Health Center's And Michelle Stephan's Joint Partial Motion To Dismiss Plaintiff's Petition (docket no. 11), conceding that Title VII does not provide protection from sexual orientation discrimination, but asserting that she has properly exhausted and pleaded claims of sexual discrimination, sexual harassment, and retaliation for complaining about sexual harassment under Title VII and the ICRA, under a "same-sex harassment" theory.  The defendants filed a Joint Reply Brief (docket no. 15), in further support of their motion to dismiss on February 22, 2013.

The defendants requested oral arguments on their motion to dismiss.  I conclude, however, that the parties have adequately briefed the issues and that oral arguments are unlikely to be beneficial.  Therefore, I will consider the motion on the parties' written submissions.

---

[4] I will not speculate here on whether this Counterclaim alleges defamation, abuse of process, or some other tort or torts.

12

## II.    LEGAL ANALYSIS

### A.    Standards For Dismissal Pursuant To Rule 12(b)(6)

The defendants seek dismissal of Robertson's Petition, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which authorizes a pre-answer motion to dismiss for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  As the Eighth Circuit Court of Appeals recently explained,

> We review de novo the district court's grant of a motion to dismiss, accepting as true all factual allegations in the complaint and drawing all reasonable inferences in favor of the nonmoving party. *See Palmer v. Ill. Farmers Ins. Co.*, 666 F.3d 1081, 1083 (8th Cir. 2012); *see also* Fed.R.Civ.P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

*Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 850 (8th Cir. 2012); *accord Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 438 (8th Cir. 2013) (quoting *Richter*, 686 F.3d at 850); *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (stating the same standards).

Courts consider "plausibility" by "'draw[ing] on [their own] judicial experience and common sense,'" *Whitney*, 700 F.3d at 1128 (quoting *Iqbal*, 556 U.S. at 679), and "'review[ing] the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation.'" *Id.* (quoting *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010)).  The Eighth Circuit Court of Appeals has refused, at the pleading stage, "to incorporate some general and formal level of evidentiary

13

proof into the 'plausibility' requirement of *Iqbal* and *Twombly.*" *Id.* Nevertheless, the question "is not whether [the pleader] might at some later stage be able to prove [facts alleged]; the question is whether [it] has adequately asserted facts (as contrasted with naked legal conclusions) to support [its] claims." *Id.* at 1129. Thus,

> [w]hile this court must "accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party," *United States v. Any & All Radio Station Transmission Equip.,* 207 F.3d 458, 462 (8th Cir. 2000), "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (quoting *[Bell Atl. Corp. v.] Twombly,* 550 U.S. [544,] 555, 127 S.Ct. 1955 [(2007)]).

*Gallagher v. City of Clayton,* 699 F.3d 1013, 1016 (8th Cir. 2012); *Whitney,* 700 F.3d at 1128 (stating the same standards).[5]

---

[5] In assessing "plausibility," as required by the Supreme Court in *Iqbal,* the Eighth Circuit Court of Appeals has explained that courts "consider[ ] only the materials that are 'necessarily embraced by the pleadings and exhibits attached to the complaint,'" *Whitney,* 700 F.3d at 1128 (quoting *Mattes v. ABC Plastics, Inc.,* 323 F.3d 695, 697 n.4 (8th Cir. 2003)), and "'materials that are part of the public record or do not contradict the complaint.'" *Miller v. Redwood Toxicology Lab., Inc.,* 688 F.3d 928, 931 (8th Cir. 2012) (quoting *Porous Media Corp. v. Pall Corp.,* 186 F.3d 1077, 1079 (8th Cir. 1999), and citing *Illig v. Union Elec. Co.,* 652 F.3d 971, 976 (8th Cir. 2011)). A more complete list of the matters outside of the pleadings that the court may consider, without converting a Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment, pursuant to Rule 12(d), includes "'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned.'" *Miller,* 688 F.3d at 931 n.3 (quoting 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 2004)). The parties both rely on the administrative Complaint Of Discrimination attached to Robertson's Petition as Exhibit A in support of and resistance to the motion to dismiss, and I find that I may also properly consider

14

### B.      The Defendants' Motion To Dismiss

Here, the defendants seek dismissal of Robertson's Title VII claims based on sexual orientation and her Title VII and state law claims based on sex on the following grounds: (1) Title VII provides no protection for sexual orientation; (2) Robertson did not exhaust administrative remedies on her Title VII or state law claims based on sex; (3) assuming that Robertson did exhaust her claims based on sex, she has not adequately pleaded claims based on sex, rather than claims based on sexual orientation; and (4) Robertson's failure to allege sexual harassment means that she cannot assert a claim for retaliation for complaining about a sexually hostile work environment. I will consider these grounds for dismissal in turn.

### 1.      Lack of Title VII protection for sexual orientation

The defendants argue that it is well-settled that Title VII's prohibitions against discrimination and harassment based on sex do not include discrimination based on sexual orientation. Thus, they contend that Robertson's Title VII claims based on sexual orientation in Count I must be dismissed. Robertson acknowledges that, under the current state of federal law, discrimination based on sexual orientation generally is not covered by Title VII, so that her causes of action based on sexual orientation discrimination in Count I can proceed only under the ICRA, IOWA CODE § 216.6(1)(a).

Title VII makes it "an unlawful employment practice for an employer . . . to fail or refuse to hire . . . or otherwise to discriminate against any individual . . . because of such individual's . . . sex." 42 U.S.C. § 2000e–2(a)(1). Although courts have

---

that exhibit. *See Blakely v. Schlumberger Tech. Corp.*, 648 F.3d 921, 931 (8th Cir. 2011) ("We have previously held that an EEOC charge is a part of the public record and may be considered on a motion to dismiss." (citing *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 802–03 (8th Cir. 2002)).

recognized that "[g]ender stereotyping can violate Title VII when it influences employment decisions," *see Hunter v. United Parcel Serv., Inc.*, 697 F.3d 697, 702 (8th Cir. 2012) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 251 (1989)), and the Supreme Court has recognized that Title VII may protect against "same-sex harassment," if it is shown to be "because of sex," *see Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998), the Eighth Circuit Court of Appeals, like other courts, has concluded that "Title VII does not prohibit discrimination against homosexuals." *Williamson v. A.G. Edwards and Sons, Inc.*, 876 F.2d 69, 70 (8th Cir. 1989); *accord Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 762 (6th Cir. 2006) (concluding that, under Title VII, "sexual orientation is not a prohibited basis for discriminatory acts"); *Hamm v. Weyauwega Milk Prods., Inc.*, 332 F.3d 1058, 1066 (7th Cir. 2003) (concluding that a claim of harassment on the basis of sexual orientation cannot give rise to a Title VII retaliation claim); *Bibby v. Philadelphia Coca Cola Bottling Co.*, 260 F.3d 257, 261 (3d Cir. 2001) ("Title VII does not prohibit discrimination based on sexual orientation. Congress has repeatedly rejected legislation that would have extended Title VII to cover sexual orientation."). Robertson does not assert that she is alleging harassment because of sex arising from rumors that falsely labeled her a lesbian in an effort to debase her femininity. *Cf. Schmedding v. Tnemec Co., Inc.*, 187 F.3d 862, 865 (8th Cir. 1999) (considering a male plaintiff's claim alleging that he was falsely labeled a homosexual to debase his masculinity). Rather, she acknowledges that she *is* a lesbian and she alleges that she was harassed and discriminated against *both* because of her sex (female) *and* because of her sexual orientation (lesbian). Title VII has not been construed to permit the latter claim.

Therefore, the part of the defendants' motion to dismiss seeking dismissal of Title VII claims in Count I based on sexual orientation is granted. On the other hand, the ICRA expressly prohibits discrimination based on "sexual orientation," *see* IOWA

CODE § 216.6(1)(1),[6] so that Robertson's claims of discrimination and harassment based on sexual orientation may proceed under state law.

## 2. *Exhaustion of claims based on sex*

Next, the defendants seek dismissal of Robertson's Title VII and state law claims based on sex, because they contend that Robertson failed to exhaust those claims by raising them in her administrative charge. Unlike the first issue in the defendants' motion for partial dismissal, this issue is hotly contested.

### a. *Arguments of the parties*

The defendants argue that Robertson's completed ICRC complaint form shows that she expressly answered "no" to the question, "Do you believe you were discriminated against because of your sex?" They also argue that Robertson's narrative attached to her administrative charge made it abundantly clear that her complaint of discrimination and/or harassment is based on her sexual orientation, not on her gender. Therefore, they argue that Robertson's federal and state claims for discrimination and harassment based on sex should be dismissed for failure to exhaust administrative remedies with respect to those claims.

---

[6] This provision of the ICRA provides, in pertinent part, as follows:

> 1. It shall be an unfair or discriminatory practice for any:
>
> a. Person to refuse to hire, accept, register, classify, or refer for employment, to discharge any employee, or to otherwise discriminate in employment against any applicant for employment or any employee because of the . . . sexual orientation . . . of such applicant or employee, unless based upon the nature of the occupation. . . .

IOWA CODE § 216.6(a)(1).

Robertson argues that she did, in fact, exhaust her claims of discrimination and harassment based on sex. She argues that answering "no" to one question in the administrative charge about whether or not she believed that she was discriminated against because of her sex is not the end of the inquiry. Instead, she argues that the *facts* that she alleged in her administrative charge indicate that the hostile work environment created by Stephan's actions was, at least in part, because of Stephan's sexual desires toward those of the same sex, which creates a viable cause of action for "same-sex harassment" under *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (1998). Robertson then cites portions of her administrative charge that she argues demonstrate that the harassment to which she was subjected was related to Stephan's sexual attraction to lesbians. Robertson argues that these statements by Stephan give context to earlier and later harassment, which Robertson had noted indicated that Stephan was "inappropriately infatuated" with Robertson's sexual orientation. Robertson argues that these allegations were sufficient to put the defendants and the ICRC on notice that she was claiming that Stephan was sexually harassing her due to same-sex sexual desires. Consequently, she argues that she did exhaust her administrative remedies on her claims of discrimination and harassment because of sex under Title VII and Iowa law.

In reply, the defendants argue that I should not simply ignore Robertson's negative answer to the pertinent question about sexual discrimination in the administrative charge and that I cannot reasonably read or interpret Robertson's allegations of "sexual attraction" in her administrative charge as allegations of "same-sex harassment." They argue that Robertson did not simply "forget" to check the appropriate box for sexual discrimination or sexual harassment, she expressly rejected or disclaimed such claims. They also argue that allegations of sexual attraction or sexual desire do not, in and of themselves, amount to harassment or discrimination.

They argue that Robertson is now simply conflating "sexual attraction" with "sexual harassment," so that she has not exhausted administrative remedies as to any sexual discrimination or sexual harassment claims.

### b. *Analysis*

#### i. *The administrative exhaustion requirement*

The Eighth Circuit Court of Appeals recently explained the nature of the administrative exhaustion requirement under Title VII, as follows:

> Title VII requires that before a plaintiff can bring suit in court to allege unlawful discrimination, she must file a timely charge with the EEOC or a state or local agency with authority to seek relief. 42 U.S.C. § 2000e–5(e)(1); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002); *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974); *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (8th Cir. 1994). Congress set up an elaborate administrative procedure, implemented through the EEOC, that is designed "to assist in the investigation of claims of … discrimination in the workplace and to work towards the resolution of these claims through conciliation rather than litigation." *Patterson v. McLean Credit Union*, 491 U.S. 164, 180–81, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), superseded by statute on other grounds, Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1071. The text of the statute on exhaustion provides:
>
>> A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter.
>
> 42 U.S.C. § 2000e–5(e)(1) (emphases added). If the agency dismisses the charge and notifies the complainant of her

> right to sue, then the complainant has ninety days to bring a
> civil action in federal court. *Id*. § 2000e–5(f)(1).

*Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 850-51 (8th Cir. 2012) (rejecting the plaintiff's contention that retaliation claims arising from a charge filed with the EEOC did not require exhaustion).

As to the effect and scope of exhaustion, the Eighth Circuit Court of Appeals has explained,

> The employee may not bring allegations in a Title VII action
> if they go beyond those that "could reasonably be expected
> to grow out of the charge of discrimination" filed with the
> EEOC. *Kells v. Sinclair Buick–GMC Truck, Inc.*, 210 F.3d
> 827, 836 (8th Cir. 2000) (internal quotation omitted). While
> a charge of discrimination "need not specifically articulate
> the precise claim, it must nevertheless be sufficient to give
> the employer notice of the subject matter of the charge and
> identify generally the basis for a claim." *Humphries v.
> Pulaski Cnty. Special Sch. Dist.*, 580 F.3d 688, 697 (8th
> Cir.2009) (internal quotation omitted).

*Malone v. Ameren UE*, 646 F.3d 512, 516 (8th Cir. 2011); *Bissada v. Arkansas Children's Hosp.*, 639 F.3d 825, 830 (8th Cir. 2011) ("'The exhaustion requirement may be satisfied if the civil claim grows out of or is like or reasonably related to the substance of the allegations in the administrative charge, but the civil suit can be only as broad as the scope of any investigation that reasonably could have been expected to result from the initial charge of discrimination.'" (quoting *Fanning v. Potter*, 614 F.3d 845, 851–52 (8th Cir. 2010)).

The Eighth Circuit Court of Appeals has explained why courts must consider what is *alleged* in the administrative complaint to determine the scope of what is exhausted, as follows:

> "[C]ourts should not use Title VII's administrative
> procedures as a trap for unwary *pro se* civil-rights

20

> plaintiffs…. We …, therefore, when appropriate, construe
> civil-rights and discrimination claims charitably." *Shannon*
> *[v. Ford Motor Co.]*, 72 F.3d [678,] 685 [(8th Cir. 1996)];
> *accord Cobb [v. Stringer]*, 850 F.2d [356,] 359 [(8th Cir.
> 1988)] (noting that discrimination complainants oftentimes
> file EEOC charges without legal assistance and observing
> that courts must "interpret[ ] [administrative charges] with
> the utmost liberality in order not to frustrate the remedial
> purposes of Title VII."). Even so, "there is a difference
> between liberally reading a claim which 'lacks specificity,'
> and inventing, ex nihilo, a claim which simply was not
> made." *Shannon*, 72 F.3d at 685 (internal citation omitted).

*Duncan v. Delta Consol. Indus., Inc.*, 371 F.3d 1020, 1025 (8th Cir. 2004), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011) (*en banc*).

The Eighth Circuit Court of Appeals has applied this "exhaustion" standard focusing on the substance of allegations in the administrative charge to determine the scope of administrative exhaustion where a plaintiff failed to check the box on the administrative complaint identifying a claim that the plaintiff later tried to bring in court. *See Tyler v. University of Ark. Bd. of Trustees*, 628 F.3d 980, 989 (8th Cir. 2011) (considering whether the plaintiff ever mentioned gender in his administrative complaint or made other allegations indicative of gender discrimination, notwithstanding his failure to check the box indicating that his complaint involved gender discrimination, where his administrative charge was plainly addressed to racial discrimination); *Bainbridge v. Loffredo Gardens, Inc.*, 376 F.3d 756, 760 (8th Cir. 2004) (concluding that a "retaliation" claim was not administratively exhausted where the plaintiff did not check the "retaliation" box on the civil rights complaint form "and did not allege any facts in the complaint form connecting his termination with his alleged complaint about the racial slurs" and the ICRC investigator had not addressed "retaliation' because the plaintiff "'did not directly allege retaliation'"). On the other

21

hand, in *Blakely v. Schlumberger Tech. Corp.*, 648 F.3d 921, 931 (8th Cir. 2011), the Eighth Circuit Court of Appeals affirmed the district court's dismissal of gender and disability claims for lack of exhaustion, where the plaintiff did not challenge the district court's conclusion that she failed to exhaust her administrative remedies by failing to check the boxes for "sex" and "disability" discrimination.

### ii. *Exhaustion here*

Here, the defendants argue that Robertson did not merely fail to check the box for discrimination or harassment based on sex, she expressly stated that she was *not* alleging sex discrimination in answer to a specific inquiry in the administrative complaint form. *Compare Tyler*, 628 F.3d at 989; *Bainbridge*, 376 F.3d at 760. I also note that, unlike most *pro se* civil-rights plaintiffs, who might be trapped by unwary completion of an administrative charge and, therefore, whose administrative claims should be construed "charitably," *see Duncan*, 371 F.3d at 1025, Robertson was a human resources professional who might be presumed to know the difference between and the legal basis for protection from discrimination because of sex versus discrimination because of sexual orientation. Also, the defendants are correct that Robertson answered "no" to Question 9 in her administrative charge about whether she was discriminated against because of sex, and "yes" to Question 10, which asked, "Do you believe you were discriminated against because of your sexual orientation?"

Nevertheless, I do not agree with the defendants that Robertson has failed to exhaust any claims based on sex. The defendants' argument that Robertson disclaimed any claim based on sex conveniently ignores that, in response to Question 6, which asked her to "[p]lease check the ACTION that the Organization took against you. (Check all that apply)," Robertson checked "Harassment," "Sexual Harassment," and "Terminated," and also wrote in after "Other," "Hostile, volital [sic] work environment." Thus, her responses to Question 6 and Question 9 appear to be

contradictory. Where Robertson, who was unrepresented at the time, gave apparently contradictory indications of the basis for her civil rights complaint in an administrative charge, I believe that the "liberal" or "charitable" reading requirement for administrative charges, *Duncan*, 371 F.3d at 1025, the consideration of claims that could reasonably be expected to grow out of the administrative charge and what notice the employer has received, *Malone*, 646 F.3d at 516, and the scope of any investigation that reasonably could be expected to result from the initial charge of discrimination, *Bissada*, 639 F.3d at 830, all suggest that Robertson was asserting *both* discrimination based on sex and discrimination based on sexual orientation.

Furthermore, I believe that the *substance* of the allegations in Robertson's administrative charge is more important than what boxes she marked or what answers she gave to yes/no questions on the administrative complaint form. Although the Eighth Circuit Court of Appeals in *Blakely* affirmed the district court's conclusion that the plaintiff had failed to exhaust her administrative remedies by failing to check the boxes for "sex" and "disability" discrimination, *the plaintiff in that case did not challenge that conclusion*. *See* 648 F.3d at 931. In contrast, the Eighth Circuit Court of Appeals focused on the *substance* of the allegations in the administrative charge in other cases in which the parties did dispute what claims are exhausted. *See Tyler*, 628 F.3d at 989; *Bainbridge*, 376 F.3d at 760. Because the parties here dispute the scope of exhaustion, I believe that I must also focus on the *substance* of Robertson's allegations in her administrative charge, not just on her answers to certain questions on the form complaint.

Here, contrary to the defendants' arguments, the substance of the allegations in Robertson's administrative charge does not relate exclusively to discrimination and harassment based on sexual orientation. Rather, I find that the substance of Robertson's allegations in her administrative charge reasonably gave SCHC notice that

23

discrimination and harassment because of sex were also at issue and that an investigation of discrimination and harassment claims because of sex reasonably could have been expected from the substance of Robertson's allegations in her administrative charge. *See Malone*, 646 F.3d at 516 (considering whether the administrative complaint is sufficient to give the employer notice of the subject matter of the charge and identify generally the basis for a claim); *Bissada*, 639 F.3d at 830 ("'The exhaustion requirement may be satisfied if the civil claim grows out of or is like or reasonably related to the substance of the allegations in the administrative charge, but the civil suit can be only as broad as the scope of any investigation that reasonably could have been expected to result from the initial charge of discrimination.'" (quoting *Fanning*, 614 F.3d at 851–52)).

For example, in the narrative to her administrative charge, Robertson alleged that she was terminated, *inter alia*, for complaining that Stephan's "sexual oriented or *sexual in nature jokes*, comments, questions, and conversations directed to [Robertson] or about [Robertson] were offensive, unwanted and unwelcomed and [for asking Stephan] on numerous occasions to refrain from any communication referring to sexually oriented, *sexual in nature*, or personal topics." Petition, Exhibit A, narrative at 1 (docket no. 2 at 18) (emphasis added). The administrative complaint also contains allegations of numerous incidents of harassment, admittedly more often specifically identifying Robertson's sexual orientation as the *topic* of the harassment, but Robertson also alleged in her administrative charge that the harassment in 2010 was targeted toward her sexual orientation, while the harassment in 2011 became more "sexual in nature." Petition, Exhibit A, narrative at 10 (docket no. 2 at 27). Furthermore, as Robertson argues, the administrative charge alleges numerous incidents indicating Stephan's apparent attraction to lesbians, which reasonably suggest "sexual desire" for persons of her own gender on Stephan's part as a basis for all of her harassment of

24

Robertson.  As explained in more detail, below, proof of "sexual desire" is one of the three evidentiary routes for proof that "same-sex harassment" is "because of sex" under *Oncale*.  *See Smith v. Hy-Vee, Inc.*, 622 F.3d 904, 908 (8th Cir. 2010) (citing *Oncale*, 523 U.S. at 80-81).  The incidents alleged in the administrative charge indicating Stephan's same-sex sexual desire include the following:  (1) Stephan asking Robertson "how do you pick up a gay person," Petition, Exhibit A at 3-4 (docket no. 2 at 20-21); (2) Stephan telling Robertson that she "was considering hooking up with a woman," *see id.* at 6 (docket no. 2 at 23); and (3) Stephan bringing up how her husband believed that she was sexually attracted to Robertson and that this was the basis for the divorce, *see id.*  Thus, a conclusion that Robertson did administratively exhaust discrimination and harassment claims based on sex is an appropriate liberal reading of her administrative charge, not the invention of claims *ex nihilo* that simply were not made.  *Duncan*, 371 F.3d at 1025.

Under these circumstances, I conclude that the portion of the defendants' motion to dismiss seeking dismissal of Robertson's claims alleging discrimination and harassment because of sex for failure to administratively exhaust them is denied.

### 3.    *Pleading of claims based on sex*

Next, the defendants contend that, even if Robertson exhausted her claims based on sex, she has not adequately pleaded in her Petition that she was subjected to discrimination or harassment because she is a woman, rather than because she is a lesbian.  This contention is also hotly contested.

### a.    *Arguments of the parties*

In their opening brief, the defendants assert that the allegations in Robertson's Petition fall far short of providing the facts necessary to state a plausible claim for discrimination or harassment because of Robertson's sex, under either Title VII or the ICRA.  They argue that, although Robertson makes conclusory allegations that she was

subjected to unwanted or unwelcome sexual comments, questions, conversations, texts, and jokes, the examples pleaded all deal with her sexual orientation, not her status as a woman. The defendants assert that Robertson's Petition is devoid of allegations that men were treated more favorably than she was or that the harassment she allegedly suffered was because of her gender, rather than because of her sexual orientation.

Robertson responds that her claims of discrimination and harassment because of sex are based on the recognition of same-sex harassment claims in *Oncale* and, more specifically still, based on adequate allegations that Stephan's harassing conduct was motivated by sexual desire. Robertson argues that she does not have to prove that Stephan is a homosexual or investigate Stephan's sexual history to establish that Stephan discriminated against her because she is a woman, as long as she has alleged conduct directed at her that allows the inference that she was harassed because she is a woman. Thus, Robertson argues that she has pleaded sufficient facts to make a plausible claim that Stephan's harassing actions were motived by same-sex attraction or desire.

In reply, the defendants argue that "same-sex attraction" is not the same as "same-sex harassment" and that Robertson may have alleged "same-sex attraction," but she has not alleged the existence of harassment on the basis of her gender. In other words, they argue that the substance of Robertson's allegations does not sufficiently allege conduct amounting to a hostile work environment, as a matter of law, because the conduct alleged is not sufficiently severe to create a hostile work environment. They argue that, putting aside Robertson's pleading of labels and conclusions that the conduct was "unwelcome" and "harassing," it is "obvious" from the substance of the conduct alleged that Robertson does not meet the elements required to establish a valid claim of sexual harassment or sexual discrimination.

### b.    Analysis

#### i.    Harassment because of sex

In considering the adequacy of the pleading of Robertson's sex discrimination and sexual harassment claims, I will not distinguish between her claims under Title VII and comparable claims under the ICRA. I have previously noted that "[i]t is widely accepted in the Eighth Circuit that generally no distinction is made between claims based on federal law and comparable state law claims under the ICRA." *Soto v. John Morrell & Co.*, 285 F. Supp. 2d 1146, 1177–78 (N.D. Iowa 2003) (citing *Hannoon v. Fawn Eng'g Corp.*, 324 F.3d 1041, 1046 (8th Cir. 2003); *Beard v. Flying J, Inc.*, 266 F.3d 792, 798 (8th Cir. 2001)); *see Mercer v. City of Cedar Rapids*, 308 F.3d 840, 845 n.2 (8th Cir. 2002) (noting, in a sex discrimination case, "'The [Iowa Civil Rights Act] is interpreted to mirror federal law. . . . Thus, our analysis of [plaintiff's Title VII] claim applies equally to [her] ICRA claim.'" (quoting *Fisher v. Pharmacia & Upjohn*, 225 F.3d 915, 919 n.2 (8th Cir. 2000)); *see also Boyle v. Alum-Line, Inc.*, 710 N.W.2d 741, 750 (Iowa 2006) ("[T]he elements for the Title VII [sexually hostile work environment] claim mirror the elements of the ICRA claim."); *McElroy v. State*, 703 N.W.2d 385, 391 (Iowa 2005) ("Because the ICRA is in part modeled after Title VII, we have traditionally looked to federal law for guidance in interpreting it."). However, federal law is not controlling, but merely provides an analytical framework for analyzing ICRA claims. *See Soto*, 285 F. Supp. 2d at 1178 (citing *Hulme v. Barrett*, 449 N.W.2d 629, 631 (Iowa 1989)). With these principles in mind, unless a distinction between Title VII and the ICRA becomes critical, my analysis of Robertson's Title VII claims based on sex applies equally to her ICRA claims.

As the Eighth Circuit Court of Appeals has explained,

> [H]ostile work environments created by supervisors or coworkers have the following elements in common: (1) the plaintiff belongs to a protected group; (2) the plaintiff was

> subject to unwelcome harassment; (3) a causal nexus exists
> between the harassment and the plaintiff's protected group
> status; and (4) the harassment affected a term, condition, or
> privilege of employment. *Al–Zubaidy v. TEK Indus., Inc.*,
> 406 F.3d 1030, 1038 (8th Cir. 2005).

*EEOC v. CRST Van Expedited, Inc.*, 679 F.3d 657, 683 (8th Cir. 2012) (quoting *Gordon v. Shafer Contracting Co.*, 469 F.3d 1191, 1194–95 (8th Cir. 2006), and distinguishing between additional elements for proof of harassment by supervisory employees and proof of harassment by co-workers). It appears that the elements at issue on the defendants' motion to dismiss are the third and fourth ones, the "causal connection" or "because of sex" element and the "harassment affecting employment" element, respectively.

The Eighth Circuit Court of Appeals has explained the "causal nexus" or "because of sex" element as follows:

> In *Oncale*, the Supreme Court that . . . "Title VII does not
> prohibit all verbal or physical harassment in the workplace;
> it is directed only at 'discrimination because of ... sex.'"
> 523 U.S. at 80, 118 S.Ct. 998 (emphasis in original). [T]he
> Court noted that it "ha[d] never held that workplace
> harassment ... is automatically discrimination because of sex
> merely because the words used have sexual content or
> connotations." *Id.*

*Smith v. Hy-Vee, Inc.*, 622 F.3d 904, 907 (8th Cir. 2010); *Sheriff v. Midwest Health Partners, P.C.*, 619 F.3d 923, 929 (8th Cir. 2010) (stating, "'[T]he plaintiff . . . must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted "discrimination because of sex."'" *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (quoting Title VII) (internal alterations omitted). '"The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not

exposed."' *Id.* at 80, 118 S.Ct. 998 (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 25, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993) (Ginsberg, J., concurring)).").

As to the element requiring proof that the "harassment affected a term, condition, or privilege of employment," the Eighth Circuit Court of Appeals has explained that "[a] sexually hostile work environment is one in which the sexual harassment would reasonably be perceived, and is perceived by the victim, as '"sufficiently *severe or pervasive* to alter the conditions of the victim's employment and create an abusive working environment."'" *Sheriff*, 619 F.3d at 930 (emphasis added) (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-22 (1993), in turn quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). The court has explained that, in this analysis,

> Relevant factors to determine objectivity include the frequency and severity of the discriminatory conduct; whether it can be characterized as "physically threatening or humiliating, or a mere offensive utterance"; whether it presents an unreasonable interference with the employee's work performance, *Harris*, 510 U.S. at 23, 114 S.Ct. 367, or "make[s] it more difficult to do the job," *id.* at 25, 114 S.Ct. 367 (Ginsberg, J., concurring) (internal alteration omitted).

> The inquiry required to separate actionable harm from "merely unpleasant conduct" is necessarily a fact intensive one, *Moring v. Ark. Dep't of Correction*, 243 F.3d 452, 456 (8th Cir. 2001), and encompasses all circumstances supported by credible evidence, *Harris*, 510 U.S. at 23, 114 S.Ct. 367. The whole pattern of conduct must be examined, for its severity and pervasiveness cannot be fully understood by "carving it 'into a series of discrete incidents.'" *Hathaway [v. Runyon]*, 132 F.3d [1214,] 1222 [(8th Cir. 1997)] (citation omitted); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). For these reasons it is up to the jury "to decide whether particular conduct is 'egregious enough'

29

> to merit an award of damages." *Hathaway*, 132 F.3d at
> 1221 (quoting *Harris*, 510 U.S. at 24, 114 S.Ct. 367
> (Scalia, J., concurring)).

*Sheriff*, 619 F.3d at 930.

### ii.  *Same-sex harassment*

When sexual behavior is directed at a woman *by a man*, it raises the inference that the harassment is based on the woman's sex.  *See Sheriff*, 619 F.3d at 929.  In addition, in *Oncale*, the Supreme Court recognized that same gender sexual harassment may also be actionable.  *Smith*, 622 F.3d at 907 (citing *Oncale*, 523 U.S. at 80).  More specifically,

> In analyzing the same-sex harassment claim, the Court [in *Oncale*] noted that it "ha[d] never held that workplace harassment … is automatically discrimination because of sex merely because the words used have sexual content or connotations." [*Oncale*, 523 U.S. at 80]. Rather, the Court set out three evidentiary routes a plaintiff can use to show the conduct in a same-sex harassment claim was based on sex. *Id.* at 80–81, 118 S.Ct. 998. First, a plaintiff can show that the conduct was motivated by the co-worker's sexual desire for persons of the same sex. *Id.* at 80, 118 S.Ct. 998. Second, a plaintiff can show the harasser was motivated by a general hostility to the presence of the same gender in the workplace. *Id.* Third, a plaintiff may offer direct comparative evidence about how a harasser treated both males and females differently within a mixed-sex workplace. *Id.* at 80–81, 118 S.Ct. 998.

*Smith*, 622 F.3d at 907-08; *McCowan v. St. John's Health Sys.*, 349 F.3d 540, 543 (8th Cir. 2003) (describing the same "three evidentiary routes by which a same-sex plaintiff can show that the conduct was based on sex"); *see also Pedroza v. Cintas Corp. No. 2*, 397 F.3d 1063, 1070 (8th Cir. 2005) (rejecting the argument that Title VII establishes dual standards for the "based on sex" showing required in male and female same-sex

harassment cases and concluding that courts may look to cases that involve male same-sex harassment to determine whether a female, same-sex harassment plaintiff has made the showing required to create a jury question upon the "because of sex" requirement).

### iii.    Robertson's "same-sex harassment" allegations

Robertson contends, the defendants apparently ultimately concede, and I specifically conclude that Robertson's factual allegations in her Petition are more than sufficient to give facial plausibility to her claim that Stephan was motivated by same-sex desire. *See Richter*, 686 F.3d at 850 (stating the "plausibility" standard for stating a claim upon which relief can be granted); *Smith*, 622 F.3d at 907 (recognizing that a plaintiff can demonstrate that same-sex harassment is "because of sex" by showing that the conduct was motivated by the co-worker's sexual desire for persons of the same sex). The pertinent allegations of same-sex desire include the following: (1) that Stephan was "inappropriately infatuated with Robertson's sexual orientation," *see* Petition at ¶ 13(a)(11); (2) that, based on the volume of inappropriate texts and e-mails, Robertson's partner believed that Stephan had a sexual attraction to Robertson, *see id.* at ¶ 13(a)(13); (3) that Stephan sent Robertson texts and e-mails stating that Stephan "was considering hooking up with a woman," *see id.* at ¶ 13(a)(17); and (4) that Stephan related to Robertson that Stephan's husband believed that Stephan was divorcing him because she was a lesbian and wanted to have sex with Robertson, *see id.* at ¶ 13(a)(18).

The defendants contend that, nevertheless, Robertson has not alleged legally sufficient *harassment* based on same-sex desire. They continue to parse Robertson's allegations in terms of whether the harassment was allegedly because of Robertson's sex or because of her sexual orientation. First, I think that allegations of a female harasser's sexual attraction to another woman she knows to be a lesbian do not turn the harasser's conduct into allegations of harassment based solely on sexual orientation.

Rather, I believe that, if anything, such allegations heighten the plausibility that the harassment is based on same-sex desire, because the target may be believed to be more receptive to same-sex advances. *Richter*, 686 F.3d at 850 (stating the "plausibility" standard for stating a claim upon which relief can be granted). It is not necessary to show that the alleged same-sex *harasser* is "strictly" homosexual, only that the alleged same-sex harasser was motivated by some degree of homosexual desire towards the plaintiff. *See Pedroza*, 397 F.3d at 1069 n.2. Similarly, the circumstance (or happenstance) that the *victim* of alleged same-sex harassment was admittedly a homosexual does not negate the inference that the victim was harassed *because his or her gender was the same as the harasser's*, where the harassment can be shown (or plausibly alleged) to be based on some degree of same-sex desire.

Second, I read *Oncale* and *Smith* to stand for the proposition that, if a plaintiff makes sufficient factual allegations of same-sex desire by the alleged harasser, the plaintiff has plausibly alleged that *all* of the alleged harasser's conduct in a same-sex harassment claim was based on sex. *Smith*, 622 F.3d at 907 (citing *Oncale*, 523 U.S. at 80–81). To put it another way—the way stated by Robertson—factual allegations that plausibly show that Stephan was motivated by same-sex desire give context to earlier and later harassment, thus plausibly suggesting that those incidents were harassment "because of sex."

Third, the defendants have focused only on the "severity" aspect of unlawful sexual harassment, ignoring that "[a] sexually hostile work environment is one in which the sexual harassment would reasonably be perceived, and is perceived by the victim, as '"sufficiently severe *or pervasive* to alter the conditions of the victim's employment and create an abusive working environment."'" *Sheriff*, 619 F.3d at 930 (emphasis added) (quoting *Harris*, 510 U.S. at 21-22, in turn quoting *Meritor Savings Bank, FSB*, 477 U.S. at 67). Furthermore, "[t]he whole pattern of conduct must be examined, for

its severity and pervasiveness cannot be fully understood by 'carving it "into a series of discrete incidents."'" *Id.* (quoting *Hathaway*, 132 F.3d at 1222 (citation omitted)).

Here, Robertson has not just made conclusory allegations that conduct towards her was unwelcome, she has alleged frequent—indeed, nearly constant—comments, questions, conversations, texts, and e-mails of inappropriate and offensive content concerning her sexual orientation (which, as explained above, in the context of same-sex harassment, concerns her gender). *See id.* (stating "relevant factors" to determine whether harassment is actionable as including the frequency and severity of the discriminatory conduct). She has also alleged that such conduct unreasonably interfered with her ability to do her job, because it impacted her health and personal life, *see, e.g.,* Petition at ¶ 13(a)(12), made her working environment stressful and unpleasant to the point that it interfered with her ability to address workplace issues that fell within her responsibilities, *see, e.g., id.* at ¶ 13(a)(20) (alleging that Stephan's conduct made Robertson reluctant to bring to Stephan's attention concerns about her attire at work that fell within Robertson's duties as the human resources director), and interfered with her work relationships with others, *see, e.g., id.* at ¶ 13(a)(5), (17), not to mention the instances in which Stephan allegedly retaliated against Robertson for her complaints about Stephan's conduct by excluding her from meetings relevant to her job duties, *see, e.g., id.* at ¶ 13(a)(7), (9), (15), (18), (19). These factual allegations are sufficient to allege a plausible claim that the work environment was sexually hostile.

Therefore, the part of the defendants' motion to dismiss seeking dismissal of Robertson's claims based on sex for failure to state claims upon which relief can be granted is denied.

### 4. *Pleading of retaliation*

Finally, the defendants seek dismissal of Robertson's claims alleging retaliation for complaining about a sexually hostile work environment, but they do so solely on the

ground that, because Robertson has failed to allege a sexually hostile work environment, she has not made any plausible claim that the defendants retaliated against her for reporting a hostile work environment based on gender. There are at least two problems with this contention.

First, I concluded, above, that Robertson has adequately alleged a hostile work environment based on sex, not just based on sexual orientation. Second, the Eighth Circuit Court of Appeals "'applies § 2000e–3(a) broadly to cover opposition to "employment actions that are not unlawful, as long as the employee acted in a good faith, objectively reasonable belief that the practices were unlawful."'" *Guimaraes v. SuperValue, Inc.*, 674 F.3d 962, 977 (8th Cir. 2012) (quoting *Pye v. New Aire, Inc.*, 641 F.3d 1011, 1020 (8th Cir. 2011), in turn quoting *Bonn v. City of Omaha*, 623 F.3d 587, 591 (8th Cir. 2010)). Thus, Robertson's claim of retaliation for complaining about a sexually hostile work environment could survive independently of the merits or the adequacy of the pleading of her claim of a sexually hostile work environment, if Robertson pleaded a factual basis for her plausible, reasonable belief that the conduct she complained about constituted a sexually hostile work environment, and that such complaints resulted in retaliation, and I conclude that she has.

Therefore, the part of the defendants' motion to dismiss seeking dismissal of Robertson's claims of retaliation for complaining about a sexually hostile work environment is denied.

## III.    CONCLUSION

I agree with the parties that Title VII provides no protection for sexual orientation. Consequently, the defendants are entitled to dismissal of Title VII claims in Count I alleging discrimination or harassment because of sexual orientation. On the other hand, contrary to the defendants' contentions, I conclude that Robertson did

exhaust administrative remedies on her Title VII or state law claims based on sex; that she has adequately pleaded claims based on sex, rather than just claims based on sexual orientation; and that she has adequately pleaded a claim for retaliation for complaining about a sexually hostile work environment.

THEREFORE, the defendants' January 22, 2013, "Joint Partial Motion To Dismiss Plaintiff's Petition" (docket no. 4) is **granted in part and denied in part**, as follows:

1.     The part of the defendants' motion seeking dismissal of Robertson's Title VII claims in Count I alleging discrimination or harassment because of sexual orientation is **granted**; but

2.     The remainder of the defendants' motion to dismiss is **denied**.

**IT IS SO ORDERED**.

**DATED** this 10th day of April, 2013.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA